NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-612

COMMONWEALTH

vs.

SERGIO CARDONA-GUEVARA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of assault and battery by means of a dangerous weapon, witness intimidation, and threatening to commit a crime.[1]  Prior to trial, the defendant moved to suppress statements he made to the police.  After an evidentiary hearing, a Superior Court judge denied the motion in a thorough written memorandum of decision and order.  On appeal, the defendant claims error in the denial of his motion to suppress, and that the admission of his

_____

[1] The defendant was acquitted of armed assault with intent to murder, possession of a firearm while committing a felony, possession of a loaded firearm while not at home or work, and possession of ammunition without a firearm identification card.

statements in evidence was not harmless beyond a reasonable doubt.  We affirm.

Discussion.  The defendant claims the motion judge should have allowed his motion to suppress his statements made to the police because he did not knowingly and intelligently waive his Miranda[2] rights, which were provided to him in his native language of Spanish, prior to being interviewed.[3]  We disagree.

A defendant's waiver of his Miranda rights must be made knowingly, intelligently, and voluntarily.  Commonwealth v. Delossantos, 492 Mass. 242, 247 (2023).  "The Commonwealth must prove beyond a reasonable doubt that the defendant's waiver of Miranda rights was valid, and 'must demonstrate not only what warnings were provided to the defendant, but also that the defendant understood such warnings.'"  Commonwealth v. Escobar, 493 Mass. 694, 700 (2024), quoting Delossantos, supra.  "In reviewing a judge's determination regarding a valid waiver of Miranda rights and voluntariness, we accept the judge's subsidiary findings of fact absent clear error,[4] give

---

[2] Miranda v. Arizona, 384 U.S. 436, 444-445 (1966).

[3] The defendant does not challenge the voluntariness of his waiver of the Miranda rights.  He does challenge the voluntariness of his statements to the police.

[4] "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  Commonwealth v. Castillo, 89

substantial deference to the judge's ultimate findings and conclusions of law, but independently review the correctness of the judge's application of constitutional principles to the facts found" (quotation and alterations omitted).[5] Delossantos, supra at 250. "The determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court" (citation omitted). Commonwealth v. Gonzalez, 487 Mass. 661, 668 (2021).

Here, the motion judge's determination that the defendant understood his Miranda rights is fully supported by the record. Because the defendant's native language is Spanish,[6] Officer Victor Martinez-Pietr[7] read the Miranda rights in Spanish from a

---

Mass. App. Ct. 779, 781 (2016), quoting Green v. Blue Cross & Blue Shield of Mass., Inc., 47 Mass. App. Ct. 443, 446 (1999).

[5] We also take an independent view of the video evidence. Commonwealth v. Bermudez, 83 Mass. App. Ct. 46, 50 (2012).

[6] The defendant grew up in Honduras and attended school there from ages five to twelve, but left school in the sixth grade. At the age of twelve, he immigrated to the United States, was placed in foster care, and eventually moved to Worcester. In Worcester, he spent three and one-half years in a bilingual program before transferring to public schools, where he also participated in a bilingual program, speaking Spanish and English. He attended high school until he was eighteen, but he dropped out because he could not pass the MCAS exam.

[7] Officer Martinez-Pietr is bilingual, fluent in both English and Spanish.

Spanish-language Miranda form.  Following the recitation of each right, the defendant confirmed his understanding.  The defendant signed the form, stating his comprehension of his Miranda rights, and that he wished to speak with the police.

After waiving Miranda, the defendant gave a video recorded interview of the incident with questions posed in English, which were translated into Spanish, answered in Spanish, and translated back into English.  At no time during the interrogation did the defendant express any difficulty understanding Officer Martinez-Pietr, and his answers to the questions were appropriate.  Neither of the officers[8] conducting the interview raised their voices, behaved aggressively, or attempted to induce the defendant into answering questions.  The defendant's demeanor was calm, he was not confused, he did not ask for any question to be repeated, and he neither requested to stop the interview, nor did he request to speak to an attorney. In fact, the defendant's comprehension of the Spanish and English interrogation was so keen that he even corrected Officer Martinez-Pietr when the defendant believed his answer had not been properly translated into English.  This demonstrated that the defendant was following the conversation in both languages.

---

[8] Worcester police Sergeant Sean Riley participated in the interview.

4

In support of the motion to suppress, Dr. Michael O'Laughlin,[9] the director of the interpreter training program at Boston University, testified that it was his opinion that the defendant did not have a complete understanding of the Miranda rights. O'Laughlin's opinion was based on language tests in Spanish and English he had administered to the defendant. Additionally, O'Laughlin quizzed the defendant on the meaning of the Miranda rights, and he concluded that the defendant only understood two out of the five warnings. O'Laughlin's report was made an exhibit at the hearing. Despite this, O'Laughlin testified on cross-examination that he had conducted his entire interview with the defendant in Spanish, that he never had any difficulty understanding the defendant as he spoke, that the defendant never expressed confusion or asked for clarification of anything that O'Laughlin said in Spanish, and that there were no fatal errors in Spanish Miranda form.

On appeal, the defendant challenges the following three findings made by the motion judge: (1) O'Laughlin did not obtain the defendant's complete personal and educational

---

[9] O'Laughlin holds bachelor's, master's, and doctoral degrees in the fields of religious studies or Biblical scholarship. According to O'Laughlin, "Biblical scholars are language experts." He is also a member of the American Council on the Teaching of Foreign Languages, the New England Translators Association, the International Association of Foreign Linguists, and sat on the board for the Massachusetts Association of Court Interpreters.

history; (2) O'Laughlin did not determine the percentage of time that the defendant spoke English and Spanish at home; and (3) O'Laughlin's conclusion as to the defendant's ability to understand the Miranda warnings was unsupported absent objective testing. We discern no error.

First, the motion judge's finding that O'Laughlin did not obtain a full history was supported by his testimony on cross-examination. O'Laughlin conceded that he did not determine what language the defendant spoke while he was in foster care, and he did not obtain any details of the defendant's bilingual education, including his grade level when he left high school. In this light, we are not left with the definite and firm conviction that the motion judge made a mistake in her finding that O'Laughlin's did not obtain the defendant's complete personal and educational history.

Second, again, O'Laughlin conceded on cross-examination that he did not actually ask the defendant whether he and his wife primarily spoke Spanish as opposed to English at home. Despite this, O'Laughlin opined that the defendant's family spoke sixty percent Spanish at home, and overall, the defendant spoke approximately fifty percent English and fifty percent Spanish. Also, these estimations of what percentage each language was spoken in and out of the home were not mentioned in O'Laughlin's report. Accordingly, we are not left with the

6

definite and firm conviction that the motion judge made a mistake in discounting O'Laughlin's opinion of the percentages of each language spoken by the defendant as she was not required to credit what appears to have been speculation. Moreover, as the Commonwealth notes, neither the first nor the second challenged findings addressed whether the defendant understood spoken Spanish well enough to knowingly and intelligently waive his Miranda rights.

Finally, the motion judge found that O'Laughlin's determination of the defendant's inability to understand spoken Spanish was not supported by objective testing. This finding is fully supported by the record. Even though O'Laughlin did objective testing of the defendant's ability to read Spanish, and read and write English, he did not objectively test the defendant's "oral literacy" in Spanish. In fact, O'Laughlin testified that he never administered a "Spanish literacy oral [test]" because he "concentrated on" the defendant's "weak language, which was English." As the motion judge noted, the absence of such an examination was significant, because O'Laughlin administered objective assessments of the defendant's English reading and listening skills, and his Spanish reading skills.[10]

_____

[10] Despite the absence of objective testing on spoken Spanish, O'Laughlin still opined that the defendant could not

7

The motion judge's conclusion that the defendant understood the spoken and written Miranda warnings and voluntarily waived them was amply supported by the evidence.  As she noted, the defendant's answers to the questions that followed "indicated a comprehension of the questions, were logical responses, and reflected an effort to exonerate himself."  Commonwealth v. Siny Van Tran, 460 Mass. 535, 559 (2011).  What the defendant requests this court to do is to substitute O'Laughlin's conclusions for the motion judge's findings, which we cannot do.  See Gonzalez, 487 Mass. at 668.  See also Commonwealth v. Neves, 474 Mass. 355, 361 (2016) ("Deferring to the motion judge's assessment, we afford little weight to expert testimony concerning the defendant's ability to comprehend and validly waive his Miranda rights").  The motion judge found O'Laughlin's testimony unpersuasive, and we are not free to disturb that finding on appeal.

The defendant also claims that his statements to the police were not voluntary.  "Whether a defendant has validly waived his rights is a separate question from whether his or her subsequent

_____

understand the Miranda warnings based on an "in your own words" assessment.  For this assessment, O'Laughlin read the Miranda warnings to the defendant and inquired what his understanding of each warning was.  The motion judge was free to reject O'Laughlin's conclusions based on this assessment as unpersuasive given the risk that the defendant's responses were self-serving absent objective testing.

8

statements were voluntary, but one that similarly 'require[s] us to examine the totality of the circumstances surrounding the making of the statements to ensure that the defendant's will was not overborne.'"  Neves, 474 Mass. at 362, quoting Commonwealth v. Hoose, 467 Mass. 395, 403 (2014).  See Commonwealth v. Estabrook, 496 Mass. 467, 477 (2025) (voluntariness of statements and Miranda waiver turn on many similar considerations).  "'A statement is presumed voluntary until a defendant produces any evidence showing otherwise,' at which point the Commonwealth must prove voluntariness beyond a reasonable doubt."  Estabrook, supra, quoting Commonwealth v. Hart, 493 Mass. 130, 135 (2023).  A statement is involuntary if, under the totality of the circumstances, "the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act" (citation omitted).  Commonwealth v. Roman, 495 Mass. 412, 416 (2025).  "A critical additional factor is whether the police used coercive tactics during the interrogation."  Estabrook, supra.

The defendant's sole support for his involuntariness claim is his low level of education, but he does not illustrate how his lack of education rendered his statements involuntary.  The defendant's education, however, is only one factor in the totality of the circumstances analysis required to determine voluntariness.  See Commonwealth v. Parham, 390 Mass. 833, 840-

9

841 (1984). Here, the record provides no basis to conclude that the defendant's will was overborne. In addition to the various factors detailed above, we also note the motion judge's finding that the interrogation was noncoercive. Indeed, the judge found that the defendant, who was twenty-six years old at the time of the interview, appeared relaxed and comfortable sitting with the officers during his interview. She further found that the tone in the room was conversational and calm. Neither officer raised their voices, exhibited aggression, or attempted to induce the defendant into answering questions.[11]

The fact that the defendant did not graduate from high school, but attended until he was eighteen, was noted by the motion judge as part of her analysis of the totality of the circumstances. Despite that, there was no evidence that the defendant's education level caused him to make his statements, or that officers exploited any lack of education through misrepresentations, minimization, or other assurances intended to trick the defendant into making statements. See Commonwealth v. Delacruz, 463 Mass. 504, 515-516 (2012). Rather, as the motion judge concluded, the defendant's will was not overborne,

---

[11] In fact, in his brief, the defendant notes his agreement with the motion judge's finding that the video of the interview depicts a calm setting and that the officers did not raise their voices in the interview.

10

and nothing occurred during the interview to support an argument that his statements were anything other than of his own free will.[12]

Judgments affirmed.

By the Court (Meade,
  Desmond & Wood, JJ.[13]),

*Paul Little*

Clerk

Entered:  January 12, 2026.

---

[12] Given our resolution of the defendant's appeal, we need not address whether the admission of the defendant's statements in evidence was harmless beyond a reasonable doubt, or the motion judge's alternative ground for denying the motion based on the lack of a supporting affidavit signed by someone with personal knowledge.  See Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004).

[13] The panelists are listed in order of seniority.